NO. 01-14-00822

# IN The Court Of Appeals Of Texas
## FOR THE
## First Supreme Judical District of Texas

NO. 1404673

## IN The 177th Judicial District Court
## OF Harris County, Texas

The Honorable Ryan Kelley Goeb Patrick, presiding

FILED IN
1ST COURT OF APPEALS
HOUSTON, TEXAS

JUN — 3 2015

CHRISTOPHER A. PRINE

CLERK

Weylin Alford

VS

The State of Texas

APPELLANT'S : (Response to Anders Brief/Not) Farretv-Cal/Brady v Ma
Ryland (My Responses Brief)

Weylin W. Alford #01980499
Appellant's Attorney (Pro Se)
899 FM 632 (Connally Unit/TDCJ)
Kenedy, Tx. 78119 / Non Tel.

Request for Oral Argument

I hereby certify that I Weylin WAlford handwrote this Brief AND It
Also contains a total of 7,612 words (Estm) As shown.

Weylin WAlford

- Table of Contents

List of Authorities

Statement of Case

Statement of Facts

State's Witnesses
Victor Ramirez, Harris County Sheriff's Officer Deputy
Cheryl Reberson
Audra L Shannon

- Defense Witnesses

Summary

Issues Presented

Issues Number 1
Argument And Authority
Issues Number 2
Argument And Authority
Issues Number 3
Argument And Authority

- Conclusion

List of Authorities
CASES

Anders v. California, 386 US 738, 744, 18 L.Ed.2d 493, 87 S.Ct 1396 (1967)

Barras v. State, 902 S.W.2d 178, (Tex.App.-- Houston [14th Dist.] 1984, No pet.)

Calcarone v. State, 675 S.W.2d 785, 786 (Tex.App.-- Houston [14th Dist.] 1984, No pet.)

Cedillos v. State, 250 S.W.3d 145 (Tex.App.- Eastland 2008)

Deck v. Missouri, 544 U.S. 622, 628, 125 S.C.t 2007, 161 L.Ed.2d 953 (2005)
Deck v. Missouri, 544 U.S 622, 658-659

Farreta v California 422 U.S 806

Ford v. State, 870 S.W.2d 155, 158, (Tex.App.-- San Antonio 1993, pet. Ref'd)

Hardee v. Kuhlman, 581 F.2d 330, 332 ((A2 1978)

Hobbs v. State, 778 S.W.2d 185, 186-87 (Tex.App.-- Beaumont 1985, No pet.)

Illinois v. Allen, 397 U.S 337, 350-351
Illinois v. Allen, 397 U.S 337 (1970)

Johnson v. State, 760 S.W.2d 277, 279 (Tex.Crim.App. 1988)
Johnson v. Zerbst, 304 U.S 458, 464, 58 SCt 1019, 1023, 82 L.Ed. 1461 (1938)

Jordan v State, 571 S.W.2d 883, 884 (Tex.Crim. App. 1978)

4

Logan v. State, 690 ~~823~~ S.W. 2d 311, 313-14, (Tex. App.--Dallas 1985, pet. ref'd)

Long v. State, 823 S.W. 2d 259, 282 (Tex. Crim. App. 1991)
Long v. State, 823 S.W. 2d 259, 282 (Tex. Crim. App. 1991)

Manley v. State, 23 S.W. 3d 172, 173 (Tex. App.--Waco 2000, pet. ref'd)

U.S. v. Burch, 48 F. 3d 1233 (10th Cir. 1995)

United States v. Long, 597 F. 3d 720 (5th Cir. 2010)

Constitutional Provisions

Tex. Const. Art 1 § 10

Tex. Const. Art 1 § 10

U.S. Const. Amend. 6th

U.S. Const. Amend 14th

U.S. Const Amend 5th

U.S. Const Amend 4th

# IDENTIFICATION OF THE PARTIES

Pursuant to Tex. R. App. P. 38.1(A), listed below is a list of the interested parties:

1). **Appellant:** Mr. Weylin Alford
Connally Unit/TDCJ
899. FM 632
Kenedy, Tx. 78119/Non Tel.

2). **Appellate counsel:** Weylin W. Alford (Response) Pro-se/Self Representation
Connally Unit/TDCJ 899 FM 632
Kenedy, Tx. 78119/Non Tel.
Glenn J Youngblood (Att. at Law) 5555 South Loop West. Ste. 396 Bellaire, Tex 77401

3). **Trial Judge:** Hon. Ryan Kelley Goeb Patrick
1201 Franklin St., 19th Fl.
Houston, Tx. 77002

4). **Complainant:** Adria Shannon/Cheryl Roberson/Victor Ramirez;
Edmundo Ojeda/Richard Berrios/David Cortazar;
Daniels, Marion/Leachman R.B./Spears, Kanisha;
Spicher Frank

5). **Defendant's Trial Counsel:** Weylin W. Alford (Pro-se) Trial/Pre Trial, Etc;
Standby Counsel (Made/Forced) Punishment Faze
Juan Aguirre: (Attorney at Law) SBOT No. 24031692 1919
North Loop West, Suite 310 Houston, Tex 77008 (713) 677-0265

6). **State's Trial Counsel:** Mr. Mathew Gilliam
1201 Franklin St., Ste. 600
Houston, Tx. 77002

7). **Appellate Counsel for the State:** Alan Curry
Assistant District Attorney
1201 Franklin, Suite 600
Houston, TX 77002

## STATEMENT of CASE :

The Appellant, Weylin Alford was (Allegely) indicted on January 9, 2014 by a Harris County Grand Jury on a charge of Burglary of a Habitation a Second degree, that should of been a 3rd degree Breaking & Entering with an intent to Assault ; Alleged Date to have occurred on October 12, 2013. Said indictment further alleged that Complainant Audra L Shannon own Habitation (when) under Texas Statues and codes Annotated Sec. 30.2 (States) No evidence of person specified in indictment ; No prosecution (Also) said indictment alleged Appellant had been twice previously convicted of Possession of a Controlled Substance (both NON-Relative SERIOUSNESS to the Allegely charge) Cause Number 3022258 in the 147th District Court of Travis County, Texas on April 7, 2003 and Possession of a Controlled Substance in Cause Number 1289552 in the 185 District Court of Harris County, Texas on January 4, 2014 (Later); Found to be state jail prior/conviction; Enhancement Abanded; never should've been on indictment; (Indictment should've been Dismiss) Check (Pg 33) Motion to Quash Enhancement Paragraph (Pg 52) Motion to Set aside the indictment Transcript; (from) Court report: Linda Hacker CSR# 4167 /177th District Court (Vol. 1 of 1) Trial Court Cause 1404673 (Clerk's Record) which both Enhancement was entered in as evidence And presented to the jury; Exhibit 14 Jail Card Number #1 Etc... (unlike) Mr Glen J. Young Blood stated in his brief pg 7 of 36 (Line 10/12) Statement of Case. He (Mr Youngblood) stated: Pre-trial was September 9, 2014 (When, As I Stated); In post conviction Relief (Texas Court of Criminal Appeal) Dismissed it on January 21, 2015; There Were A Numerous Amount of Dates the Actaul Procedure/protocol inside a courtroom setting (Pretrial) such as motion hearing was haled; All Dates He (Mr Young-blood) stated was inaccurate, I Weylin W Alford/Defendant Advised the Court I was Dismissing Court Appointed Attorney (Sept.19, 2015) And proceeding Pro-se and was Also Admonished by Trial Court (09/03/2015) that If that was my decision there would be Another hearing (09/19/2015) Faretta. v. Cal. to consider my request for self Representation [Reporter's Record Vol. 3] Also, upon (05/14/2015) Trial Court further advised me/Appellant that the case was set for trial on October 1, 2014 (4½ month) Enough time for proper procedure/protocol inside courtroom setting (such as) Jury trial (Also inside) Pretrial Hearing (October
(Pg 114)

• 1,2014/09/03 2014/09/19/2014 (At least three different Date's) check All motions filed handwritten by Me/Appellant (33-69 pg) Last, Upon 09/19/2014 Farretta V California hearing Defendant/Appellant After being Admonished I sign paperwork of waiver of Right to Counsel Findings of Facts to Proceed (Prose) Also Did verbally on transcript (Reporter's Record Vol 3) pg 112 was A add on Never seen Until Now [Check pg 167-169 Harris County Criminal District Docket sheet] Court Date 05/14/2014 No Minutes/words not included. I only remember pg 113 (Keep in Mind) Filed Own Motion to Dismiss Court Appoint Counsels pg 114 09/19/2014 Vol.3 pg 31 Lines 1-25 to pg 32/Vol. 3) Lines 1-25 Along with Ineffective Counsels Vol 3 p 33 line 19-25 pg 34 (1-7 line) Once again on Mr Youngblood behalf inaccurated Dates as He stated in his Brief (Statement of Case) 8 of 36 Upon Appellant's plea of not guilty on October 1, 2014 Unlike The charge of The court on Guilt or Innocence in Clerk's Record verse the one I was given the Day of trial There was A page missing between the Clerk Record pg's 133 And 134 (which states) you ARE instructed that certain Evidence was admitted before you in Regard to the defendant's having been charged ~~of The Court~~ And convicted of an offense or offense other than the one for which He is Now on trial such Evidence cannot be considered by you Against the defendant As any evidence of guilt in this case said Evidence was Admitted before you for the purpose of Aiding you, If it does Aid you in ~~this case~~ passing upon the weight you will give his testimony And you will Not consider the same for Any other purpose (Coherement) check Again pg 145 Court Reporter's Minutes [At 3:39 pm Court took up Court business outside the presence of the jury until 3:41 pm [Then] pg 145 [At 3:43 the Court read the charge until 3:49 pm ; thereafter the State waived Right to close] until [3:53 pm deliberation began until 4:44 pm; there after the jury And Admonish, instructed to Return to Return 8:30 AM on 10/2 -2014] which proves All Date by Mr Glenn Youngblood (Andre's Brief pg 8 of 36 line 1-6) was inaccurated, not to mention on pg 129 Jury note #1 (Request all exhibits time 4:40 pm 10/01/2014) Then check pg 130 -136 (pg 136) time filed 3:49 pm 10/01/2014 But missing the piece of paper between 133-134 pg (As I stated) Earlier [Coherement] Now, Upon The Morning of Oct. 2, 2014 while jury were

• deliberating (check pg 146 Court Reporter mintues) At 8:55 AM the jury began deliberating until 10:55 AM [Which] I was still down stair in holding cell try to Explain to Deputy Mondrao ~~that~~ I had trial I didn't Make It up stair until maybe 10 AM (there were Carmea on me the

whole time more sign of Cohersment. Last, Once MADE It to Court holdover A Deputy (Ojeda) make up incident; (I Believe) because of Lawsuit file on Adrain Garica, About An Alleged Shank; which Trial Court before found guilty out of his personal Interest took my Right of self Repressation [Under Farrett V. Ca] is Absolute (MeanWhile) Jury Foreman (pg 140 Request for Deputy/property Owner transcript at 910AM 10/01/2014) pg 144 Instruction to the Jury At 9:19 (on Trial Court stamped And filed) Then 9:28 stamp And Filed (Both) 10/2/2014 still while I was Either still At Harris County, Holdover cell or Courtroom Holdover. As will show later Record was Coheesed in that time (Same frame). Also, Jury Note #3 Response to #3 pg 142 At 937 AM (Judge) Then pg 143 Jury Note #4 which looks to be something wrote Extra not from Jury (time 948AM) Then After incident with Blaiff At the time (Ojeda) I was found guilty. Other Evidence (such As) witness who had nothing to do with the offenses charge Itself was Allow on the Stand against Texas Rule of Criminal Evident (Rule 403 part B) Punishment Faze (while) Stand by Court Appoint who I Already Dismiss Trial Court Forced upon Never try to Listen to me Objection/Reasoning (Not to mention) I try to tell Judge I would (At least) like Another Lawyer As well As Explain the false Allegation against me myself wasn't Allowed. Trial Court Finally stated I was sentence to 30year TDCJ. Appointed Atthorney Never poll the jury for there individually comment of guilty/innoce. or time; so there Record would Reflect As did everything Else of his effectiveness. I notified Right then of Appeal (which) was Also spoke into transcript (That Day) October 2, 2014 unlike Dates given by Mr Glen Youngblood Anders (opposite of mines; Not Friuolous) I have Original (Documentation) Copy's And If not US Department of Justice Does.

Brady Material; /Farrett. v. Cal (Check list items) In Respones To; Referance Brief (Mr. Glen J Youngblood) Anders Brief; (NOT) Frivolous:

"As Required by the Guidelines for filing An Ander's Brief's; (So, Opposite) here for Brady Material /Farrett. v. Cal; in response on to same checklist of items and comments (to): Ander's Brief; Are set forth blow in Conformance with said guide lines for Jury Trial or Trial (Itself) /produre and protocal in Courtroom";

1). Poicle Report /insufficiency of the inclictment; (Unlike) Mr. Glen J. Young Blood stated on pg 9 of 36 (Ander's Brief's) Checklist items; Defendant /Appellant, I Weylin Walker was not properly True billed; January 6, 2014 (Date inaccurred) inclicment Dated 01/08/2014; There was No legal Documentation /Memorandum After vote of nine member of Grand Jury (that) determines whether A bill is to be presented. (Tex. Code. Crim. Proc. Ann. Art. 2019; not to mention check (Index) Transcript pg's 33-68 (More so) pg 37 (Motion for Pre-trial hearing) Example 8.5). Motion Discovery of Grand Jury (probable) transcripts (Then) pg 43 Actual; Motion for Discovery of Grand Jury Transcript pg 45 Also, unlike poicle Report /Dispache telphone call/ Witnesses (unknown's) never produce (Brady Material) Brady v. Maryland, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-97, 10 L. Ed 2d 215, (1963) "It shall be the primary Duty of all prosecuting Attorneys, including any special prosecutiors, not to convict, but to see that justice is done. They shall not suppress facts or secrete witnesses capable of establing the innocence of the accused "Article 201 Texas Code of Criminal Produre This Requirement is underscored by the American Bar Association standards for the Prosecutorial function under proposed standard 3-3.11 (Also) A public prosecutor or other goverment lawyer in Criminal litigation shall make timely disclosure to counsel ator the defendant, or to the defendant or to the defendant if he has No counsel, of the Existence of evidence, known to the accused, mitigate the degree of the offense, or Reduce the punishment "Suprement Court of Texas, Rules Goverening the State Bar of Texas Art. X, 09 (Code of Professional Responsibility) Dr 7-103 (b) (1984)

2). Any Adverse pre-trial Rulings Affecting the course of the trial including but not limited to rulings on motions to quash, And Motion to suppress; Motion

for a [speedy trial was never filed] (unlike) what Appellant Appoint Counsel stated ; pg 9 of 36 (Ander's Brief) other motions was : Motion for Pre-trial Hearing (three different Dates at least); Motion to List Witnesses ; Motion to set Aside Indictment ; Motion for Discovery And Inspection ; Defendant's Motion in Limine ; Discovery Order ; filed by Judge (pg 66-68) Last Motion to Dismiss Court Appointed Counsel ; Also, show of ineffective Counsel Farrett vs Cal. 422 US 806 I Weylin W Alford | Appellant filed All my own motion as well as every other part of Trial and any other proceeding in A courtroom setting :

Pretrial motions and rulings filed by the Parties:

| Clerk's Record | Motion | Ruling | Filed by |
|---|---|---|---|
| p 31 And 32 | p 31 Motion For Psychiatric Examination ; | p 32 granted ; | Court Appoint Attorney |
| p 33-36 | Motion To Quash Enhancement Paragraph ; | NONE/Denied ; | Weylin W Alford |
| p 37 | Motion For Pre-Trial hearing ; | NONE/Denied ; | Weylin W Alford |
| p 38-39 | Defendant's Motion To have written Ruling MADE ON All Motion ; | NONE/Denied ; | Weylin W Alford |
| p 40 | Motion to Prohibit The State From offering written Statements or Report etc ; | NONE ; | Weylin W Alford |
| p 41 | Motion To Suppress Evidence ; | NONE/Denied ; | Weylin W Alford |
| p 42 | Order ; | NONE/Denied ; | Weylin W Alford |
| p 43-45 | Motion For Discovery of Grand Jury Transcripts ; | NONE transcript/Denied ; | Weylin W Alford |
| p 46 | Motion to Disclose Agreements Deals or Any Consideration with Any witness ; | GRANTED ; | Weylin W Alford |
| p 47 | Motion to List Witnesses ; | granted ; | Weylin W Alford |
| p 48-50 | Motion to Reduce Bail ; | Denied ; | Weylin W Alford |
| p 52-53 | Motion to set Aside the Indictment ; | Denied ; | Weylin W Alford |
| p 54-56 | Motion For the Appointment of A Private Investiga ; | granted verbally wrote nothing ; | Weylin W Alford |
| p 57-58 | Motion For Hybird Representation ; | NONE/verbally Don't happen in Texas ; | Weylin W Alford |
| p 59-62 | Motion For Discovery And Inspection ; | Some part granted ; | Weylin W Alford |
| p 63-64 | Defendant's Motion in Limine ; | Denied ; | Weylin W Alford |
| p 66-68 | Discovery Order ; | filed by (Judge) granted his own motion ; | Weylin Alford |
| p 114-116 | Motion to Dismiss Court Appointed Attorney ; | Denied/at grant to self Representation ; | Weylin A Alford |

3) Any Adverse Rulings during trial on objections or motions, including but not limited to objections to Admission or Exclusion of Evidence, objection premised on prosecutoral or judical misconduct, and motions for mistrial.

Appellant/me; made NO objection [Check Reporter's Record pg 16 (line) 6-25 vol.3 (then) pg 17, 18, 19, 20 +21 line 1] There were motion I filed that covered certain setting on my behalf that would fall under Admission or Exclusion ~~Motion to Disclose~~ of Evidence, objections (such As) Motion to Defendant in limine; Discovery and Inspection; Motion to Disclose Agreements Deals or Any Consid- ertion with Any witness; Etc... (Then) Prosecutorial or judicial misconduct on the prosecu- tor/Trial Court behalf in violation of Texas penal code 37.02 Perjury; (By) Deputy Ramirez | Audea L Shannon | Cheryl Roberson | Daniels, Marion | Edmundo Ojeda | Richard Berrios | David Cortazar | Leachman R.B | Spears, Kanisha | Spicher Frank; As well As, Evident with held; (Blood sample/wit ness | Dispatch telephone (call); Regular telephone conversation | Pocile Report statement Etc... Under Brady v Maryland And Texas Rule of Criminal Evident (last) motions for mistrial (who) I/Appellant never filed; But upon Admission of witness in punishment faze (which) Trial Court Also over step His jurisdiction upon Allow/Revocation of my Right to self Representation As well As violation of my 6th/14 Amendment U.S Constution Forcing A Court Appoint Lawyer on me Farre tta v. Cal Also Court Appoint being ineffective counsel.

4). Any Adverse Rulings on post-trial motions, includ ing motions for A new trial; All Rulings on motion explain in Number 2). of this section [Check pg 33-166 (then) 114-716 Reporter Record] Next, Motion for New trial; I file post Conviction Application for (11.07) writ of Habeas Corpus October 23, 2015 And The Court of Criminal Appeal Dismiss for failure to Exhaust state Court Remedies; Due to Brief not being file on Mr. Young behalf on time; Conviction was not final.

5). Jury selection [Check Reporter Record vol 3 p 109-118]; There were A 63 man jury panel which I only stricked three out of the 12 And one Altern. that was chosen; Now to my

understanding under Rule 6 Trial setting Veron's Texas Rule Annotaed; A Request for jury trial setting must be presented in writing to Judge or Court Coordinator The jury Request shall be filed not less than 30 days in Advance of the Assigned trial Date; (mines was 8 October 1, 2014) provides that, If one party obtains a non-jury setting on less than 30 day notice to opposing Counsel than opposing Counsel has two working Days from Recipt of notice of ~~the~~ setting in which to Request a jury trial to inform the court and ~~the~~ opposing Counsel, in writing of the issuses expected to be submitted to the jury The Attorney Paying the jury fee shall notify the court Coordinator immed. that a jury fee has paid And the court Coordinator shall set the same for pretrial Conference on the ~~on the step the attorney~~ (April 30, 2014) first Fri. 5 day After Request; No case will proceeds to jury trial (check pg 37 pg's missing showing Date put in (April 19, 15) Motion for pre-trial hearing) until the parties in good faith have participated in mediation, All Rules Regarding mediation set forth Above shall apply to jury trial mediation (which) wasn't done because Judge Kept saying he had to look for people (not to mention) I have Documentation stating when Ass. Counsel Asked me About wheather I wanted trial by jury Judge [Check Reporter Recored pg 161 criminal Bill of Cost]

6). Jury instruction [check Reporter Record pg 130-134 with pg's missing from original given At Trial] -vs- [Reporter Record pg 150-153]: Where pg 161 is Almost exactly like the (pg) I said missing on Charge of The Court or Innocence (that) stated; You Are instructed that certain evidence was Admitted before you in Regard to the Defendant's having been charge And convicted of An offense or offenses other than the one for which he is now on trial, such Evidence Cannot be considered by you Against the defendant as Any Evidence of guilt in this case. Said Evidence was Admitted before you for the purpose of Aiding you, If it does Aid you, in passing upon the weight you will give his testimony And you will not consider the same for Any other purpose [Cohersment

7). Insufficiency of the Evidence, including A recitation of the Elements of the offense (s) And facts and Evidence Adduced At trial Not relevant and relevant to the offense (s) upon which conviction is based;

The Evidence produced/or wasn't produced by the state consisted of testimony by:

A). Harris County Sheriff's Deputy Victor Ramirez responded to a Alledged Dispatch call never produced; what was originally thought to be an Agg. Assault and also arrested Me/Appellant a half a mile Due to (some unknown) witness away from the scene of offense; The only Discription produced from non existance; poilce Report was (Black male with gun); But two people/witness/supects/(Black male) were found fit arresting spot.

B). The Complainant/(Audra L Shannon) who Alledgely explained how the Appellant/me broke into the Residence where she was living for 4 or 5 day and knocked her out of the chair and punched her in the face and head seven or eight times before he kicked her in the back and her "lower left butt cheek" took her cell phone and wallet and lefted (which cell phone/wallet) never found (insufficiency of evidence not produced) [Check Reporter's Record vol 5, pg 69-72]; Last, Complainant/Audra L Shannon was And is a Mental Health patient (Later; you will see upon questing from District Attorney and by Me/Appellant (Pro-se) she shouldn't been force upon the stand) [Check Reporter's Record vol 5 pg 79 lines 22-25 (then) pg 80 lines 1-25 to pg 81 to 82 to 83 to 84 line 1-7] (Also) [Check Reporters Records vol. 6 pg 76 line 20-25 (then) pg 77 line 1-25] Q. (Mr Gilliam) Okay. And did you do Any thing else to harm yourself? (pg 77) A). (Complainant/Audra Shannon) Yes, Sir, I did Q. What did you do? A. I slit my wrists Q. Did the police eventually arrive on scene? A. Yes, Sir, they did. Q. And after they spoke to you, where did you go next? A. They took me to the Hospital, to the, I believe like, the—like, the pshychiatric unit. Q. Okay A) It wasn't actually -- I was just under temporary observation to make sure that I didn't harm myself again. Q. And, Ms Shannon, why did you try to harm yourself again Q) And, Ms l Shannon, why did you try to harm yourself that day? A) Because, like I said I was under alot of stress and I was -- I was just fed up The defendant and I had been going back and forth, back and forth, back and forth way before my sister/best friend ever moved into the Apartment The Defendant used to be very, controlling And have anger [pg 78 vol 6 lines 1-6] issue that I just -- I couldn't understand, very jealous rage fits. And that particular Day, that incident, it just -- it sent me over the edge Mr. Gilliam: Pass the witness, your Honor.

Q). The witness /Don homer /cheryl Roberson of the Residence who Allegde that me/Appellant Entered the home without permission where A window was broken (check All Exhibits Vol 7 of 7); no fingerprints (point of Entry) photos of Blood but; no Blood samples test (point of Entry /or habitated) other unknown witnesses releant to the offense charge It self. (check Texas Rules of Criminal Evidence; Rule 401; 402; 403) And Also violation under those same Rule to the doctrine of Brady V Maryland /mean V State who later Along with other witness (Also; under the same doctrine) Allegely followed me/Appellant Anywhere between A haff A mile to 3 mile to A Dollar General Arresting location After supposebly calling for Dispatch call to Harris County Shieriff Dpt. [Reporter Record vol.5, pg.40-48]

Elements of the offense charged are 8 (what had to be prove In indictment If indictment was really true billed).

☐ In Harris County, Texas; (True)

☐ Weylin Walford (that's my name)

☐ Did then And there unlawfully; (not true)

☐ Intent to commit An Assault; (not true) wasnt proved

☐ Enter A Habitation owned by Audra L Shannon (Ms Roberson was homeowner) ☐ A person having a greater right to possession of the habitation than the defendant 8 (no evident proveing so; no Belonging, no key; only there 4 or 5 days)

☐ without the effective consent of the complainant, namely 8 never spoke with her other than telephone conversation;

8). Any failure on the part of Appellant's trial counsel to object to foundamental error;

None by me/Appellant (pro se); but Appointed Counsel in punishment faze did not object to question I Ask to As well As, not Allow jury to polls (jury polls) signs of ineffective counsel under Farret V Cal (Also) violation of 6, 14 United State Constitution. 9). Any Adverse Rulings during the punishment phase on objection or motions.

During the punishment phase of trial the Defense Counsel was said to have objected to the admission of State's Exhibit the shank on the grounds that the chain of custody had not been proven. (Due to Brief filed from Mr Glen Youngblood opinion) pg 13 of 36 line 1-4; Exhibit 12 wasn't even the same Exhibit used during trial; that was the Alleged Exhibit Deputy Ojeda talked about in my opinion violation of the law Texas Penal Code title 8 Offense Against Public Administration. Chapter 38 Obstructing Governmental operation. Along with the rest of the witness in the Punishment Faze. Richard Berrios/David Cortazar/ Frank Spicher/Marion Daniels/Leachmen R.B/ All committed perjury; under (sec) 37. 02 Texas Penal Code About the Extraneous offense motion filed on the prosecutor's Behalf did nothing more than discredit the character of my person in front of the jury and wasn't use for As stated 8 In Texas Rules of Criminal Evidence Rule 403 (b) Other crimes, wrongs or acts. Evidence of other crimes, wrongs, or acts is not Admissible to prove the character of a person in order to show that acting in comformity there with; It may however be Admissible for other purpose such as proof of motive, opportuinty, intent, preparation, plan, knowledge, identy, or Absence of mistake or accident, provided, upon timely Request by the Accused, Reasonable, Notice is given in Advance of trial of intent to introduce in State's case in chief such Evidence other than that Arising in the same transaction. All witness offense was Relative to the offense charge.      (Not to mention) ineffective counsel consist 's of those same ground spoke on Above; After Right to self Representation was terminated because of: offense Against Public Administration Chapter 38 Obstructing Governmental operation / The Shank; He, Court Appoint Counsel (for punishment/Stand by) never followed proper produce/protocal inside courtroom setting on the non Admission of the (so call) Extraneous offense which had nothing to Do with the offense Itself. Check Texas Rules of Criminal Evidents (Rule 401) Relevant Evident.

10). Whether the sentence imposed was within the Applicable Range of punishment.      Appellant was found guilty of Burglary of A Habitation with Intent to Commit An Assault (which) was said to be seco

d degree and enhancement was used once to upp the offenses charge it self (then) once to punishment faze same enhancement was used again (improper) I was sentence 30 years and not in the range of punishment according to the law; There was only 1 enhancement on indictment (other was Abanded.) Never should've present to jury But was Check jail card # Exibits 14.

11). Wheather the written judgment Accurately Reflects the sentence that was imposed and wheather any credit was properly applied

In my opinion a numeral amount of thing went wrong on all partie the Trial Court did not Accuratly up hold on Appellant/Defendant Behalf such as; Non-Admissiblity And Admissionible of Evidence/missing witnesses/missing Blood Samples/Jury Trial (prodcure/protocal inside court room setting)/Pretrial hearing Even cohersment of instruction to jury on certain bailiff Behalf or jury charge. The judgment jury finding and the Court wasn't imposed Accurately And Doesn't Reflects the sentenceing and the time credited to Appellant/Defendant 30 years; And Either should be remandated back for new trial or Dismiss

12). Examination of the Record to determine if the Appellant was denied effective assistance of counsel.

Appellant/I Acted Prose during Trial until Punishment Faze (Obstruction of Governmental Operation) During Punishment Faze stand by Counsels Allow nurmal Amount of non relevant offense which were all Dismiss 02/27) 2015 (Even) socall The Shank who Trial Court Even over step his jurdstiction by terminating my right to self Representation Due too Allegation In proper Impeachment. Prosecutor was Allow to turn in motion of or for those (socall) extraneous offenses; (not in) timely fashion but did'nt until Last moment. Also, Court Appoint should have been Allow to file some motion in favor to show his effectiveness in Punishment Faze Faretta v. Cal

# Statement of Facts:

1). As must be Done; under the Authority of Article 39.14 of the Texas Codes of Criminal Procedure, Article 1, Section 10, 19 and 29 of the Constitution of the State of Texas, And the fourth, fifth, sixth, And fourteenth Amendments to the Constitution of the United State of America And the doctrine of Brady V. Maryland, 373 U.S. 83 And Means V. State, ~~State~~ 429 S.W. 2d 490 to view more favorable in the light Against the verdict Weylin Walford V. State of Texas Cause #1404673 In Criminal Court of Harris County Texas, the 177th District Court;

2). Also, As must be Done in Accordance to Farrett vCalifornia 422 U.S. 806 And Also under the Authority of Article 39.14 of Texas Codes of Criminal Procedure; | historical Evidence Relied upon by the majority |; Article 1 Section 10, 19, 29 of the Constitution of State of Texas And the fourth, fifth And fourteenth Amendments to Constitution of the United State of America, to view more favorable in the light Against the verdict Weylin Walford V. State of Texas Cause #1404673 In Criminal Court of Harris County Texas, the 177th District Court;

## State's Witnesses;

Victor Ramirez, Harris County Sheriff's Office Deputy: UNLike (Counsel stated) pg 15 of 36; Mr. Glen J. Youngblood: Anders Briefs "Deputy Ramirez testified that: He Responded to call initally thought to be An Aggravated Assault at 942 Fruitvale, Houston, Tx; only Discription given was Black male with A gun, No pants, color, height/weight, no hair color Etc...; No Dispatched call was ever produced; Nor pocile Report: [Reporter's Record vol. 5 of 7 pg 13; line 23-25] Q). (By Mr Gilliam) And how did you come into Contact with the Defendant on that Day? [Reporters Record vol. 5 of 7 pg 14; line 1-15] A). (Deputy Ramirez) I was Dispatched to A disturbance call And he was —— he was my suspect on that disturbance. Q) And do you Remember the Address ~~2 A~~. of the Disturbance call that you were dispatched to? A). I Do Q). What was the Address? A). It was 942 Fruitvale. (Mr Gilliam) Im showing you what's been previously marked As State's Exhibit No.1, without going into Exactly what it shows, what is that? A). Its the Address where I was dispatched to on the Disturbance... Upon Arrival He (Deputy Ramirez) stated He, met with the

WITNESS AND Homeowner Cheryl Roberson AND the Complainant Audra L Shannon. [Reporter's Record vol.5 of 7 p16 line 9-16] A). (Deputy Ramirez) I--I met with the homeowner, then I met with the victim. Q). (Mr Gilliam) And do you Recall what the homeowner's name was? A). Cheryl Roberson; Q). And do you Recall what the victim's name was? A). It was Ms. Shannon ... Later, (Mr Glenn J. Youngblood) stated Deputy Ramirez stated that he further learned that the case was Burglary of a Habitation with intent to commit an assault. Which he took photos of the broken window, the paint can and the alledgily Breaking and Enter with intent to assault (Also, keep in mind) nothing was stolen [Reporter's Record, vol. 5 of 7 pg 16-18] Then Actual Exhibits [Reporter's Record vol. 7 of 7 pg 5-31] Deputy Ramirez further testified that After he spoke to Ms Roberson and the Complainant and an unknown witness Directed him to a location (Dollar General) where Alledged suspect was found No Discription was produce other than Blackmale But two Black male Found at location [Reporter's Report vol. 5 of 7 pg 25-36] line 1-25 (pg 25); Q (Defendant/Appellant/Prose); Okay. You said earlier that you work what said of town? A).(Deputy Ramirez); Northwest. Q). Northwest. You also ID'd me as being the person who did the assault to the victim, right? A). Yes. Q). Okay, where did you locate me at? A) At the Dollar General. Q). What street is that located on? A). On Veterans Memorial? Q) Correct? Q) How far is that from the socalled dispatch where you got the telephone call from? A). Half a mile. Q). A half a mile? A) Approximately. Q) Did you receive -- when you received a dispatch call, did you receive a description with that? A). Yes, I did. Q). What was your description? A). I don't recall. It's -- it was on the Computer, on the slip. Q). Can you at least tell me what you seen me in that day? A) I can't recall. Q) Okay, Another thing is when you got to the Dollar General, was there any other individuals there with me? A). Yes. Q) Can you -- can you describe what He looked like or was he a white guy, black guy, Hispanic? A) It was witnesses. Q).Can you go in-depth -- a little bit more in Depth, detail? A) It was some females. Q). was there any males? A). NO. Q). There was no males? A). NO. Under Texas Penal Section 37.02; A person commits the offense of "Perjury" if with the intent to deceive, and with the knowledge of a statement's meaning, he makes a false statement under

oath or swears to the truth of a false statement previously made, and the statement is required or authorized by law to be made under oath. Later, you will find Deputy Ramirez committed the offense of perjury on the stand under oath and the Trial Court never have arresting Officer Contempt (Not to mention); under Brady v. Maryland Law 4 (Trials) Relative functions of court and jury — Admissibility of Evidence; It is the court and not the jury that passes on the admissibility of evidence pertinent to the issue of the innocence or guilt of the Accused. Gile v. state, 229 Md 370, 183 A2d 359, supra. (Last) Under Texas Rules of Criminal Evidence states (Rule 401) "Relevant Evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of action more probable than it would be without the evidence. (Rule 402) All relevant evidence is admissible, except as otherwise provided by constitution, by statue, by these rules or by other rules prescribed pursuant to statutory authority. Evidence which is not relevant is inadmissible (Later [Reporter's Records vol 5 of 7 pg 26 line 8] I asked; or try to admit A written statement / Police Report in to Evident 3 or 4 time and was Denied by Trial Court. Q) Okay, I have here in the police report -- Mr. Alford: May I -- may walk up to the witness, your honor? The Court: That's improper impeachment, sir. Which was no different from state's Attorney (pg 14 of vol 5 lines 2-20) one in the same; I try a few more times to admitt (pg 20 vol 5 lines 25) Q (By Mr. Alford) I have here a police report A). Uh-huh (Deputy Ramirez) Mr. Gilliam: Objection, your honor, improper impeachment. The Court: Sustained. Police report aren't evidence, Mr. Alford Mr. Alford: Well, it's an incident report from Harris County Sheriff Officer. The Court: Correct, sir. There's a way to ask the questions appropriately in this situation [Reporter Records vol 5 line 1-25] Q (By Alford) In this police report, you state -- Mr. Gilliam Objection, your honor, improper impeachment. The Court: Its hearsay. Sustained. You can't read from the police report, Mr. Alford. Q (Alford) Okay. Well, what was wrote was -- Mr. Gilliam: Objection, your honor, hearsay. The Court: Sustained. Mr. Alford: How is it hearsay if he wrote it? The Court: There's away to ask the witness the appropriate

question; And If you need to impeach him, there's a format And a way to do that, Mr. Alford. Which I) Appellant properly impeach witness. And Later you will See After Not being (witness) Deputy) able to provied a time line for a change of serie of Incident without police report under Texas Rule of Criminal Evident (401) that Police Report was most important to investgating of the crime. Later, the committing of Perjury; [pg 28 vol 5 line 19-25 then pg 29 Reporter Records] Q And you don't remember another individual there, black male? A. Another male? Q Long hair? A. There was another male there. Q There was another male there? A Uh-huh Q And some type of discrepancy between me and that gentlement? A. yes Q Now that you recall? A) yes Q you do? A. Uh-huh. Next was; how If Police statement of arresting officer wrote state there was a black male with gun and not also including in this Records [why not] Later, Another unknown witness told (him) arresting officer I was at arresting spot but He also state other witness female gave him Discription that He didn't recall. Reporter Records vol 5 line pg 31 (line) 1-25 Q And the witnesses of the -- the so called young ladies, can you verify who they were? A) I don't recall who they were Q So the young ladies that was at the Dollar General that Day, you dont know exactly who they were? [All the way to pg 32 Line 1-25] Q (lines 12-17) Q A Hispanic lady A I believe so. Q Okay Do you know around about what time that you were dispatched out A) Not off the top of my head. In the morning I believe. Later, Ask about timeline. pg 33 1-25 A) I didn't know what youre saying Q Is there a produre for a series of incidents saying like I get a Dispatch call And I get to the scene of the crime. I state what time I see -- I took the pictures And stuff like that so you can keep up with the series of incidents? Is there a -- a right Q -- procedure on that A yes we show ourselves -- we show our selves en route we put our selves out. And then we go from there and when we clear the call, we clear the call. Q So clearly you can agree with me that once you get to the scene of the crime and After the dispatch call is made, you supposed to know the time frame from the so called broken entry to taking the pictures on to pulling the victim onto the Emergency or

What have you A) It's all documented. Q Okay Thank you Mr Alford & No further questions The Court: Thank you Mr Alford Last, Distict Atthorney asked why was I choosen at arresting spot Because only Discription in His (Arrest-ing Officer) statement was Blackmale with Gun Next pg 35 line 13-23 I ask How without Discription/ No timeline Etc... He (Arresting Officer) said (line 18) A). No, I didn't. It's All Documented on our Computer. If so why couldn't Police Report Be enter as Evident (Relevant Evident) Rule 401 Texas Rule of Criminal Evident (then) Rule 403.

Cheryl Roberson

Ms Roberson testified that she was the homeowner; the conversation with me/Appellant (then) District Attorney (Mr Gilliam) Reporter Record vol 5 of 7 p 37-59 She also testified that she only knew Complainant (Audra L Shannon) two week and Record Reflects that she (Mrs Roberson) Did even know her (Audra L Shannon) Real name. she (Mrs Roberson) Also testified that she didn't know when she met me/Appellant but was some time in the year we both started work at Walmart. (2013) she also testified; she (Audra L Shannon) only stay there (942 Fruitvale) 4 or 5 days; And she (Audra L Shannon) only slept on couch, never had clothings or any other items there; (No evident) of ownership more so than me the Appellant as It states in Texas Statues And Codes Annotated Section 30.2 Burglary of Habitation state's In prosecution there have to be evidence that the habitation was owned by the person specified in the indictment and was sufficient to support trial Courts finding that she had possession of the habitation, ~~there have to be~~ title to the habitation, or greater right to possession of the Habitation than Defendant. There was nothing in the Records that reflects she (Audra L Shannon) with Evident of great right to habitation (view) [Reporter Record vol 5 of 7 pg 37-60] Then view [Report's Records 5 of 7 vol p 40 line 11-12] That If any Crime was Committed It was as simple as a Breaking and Entering from the Mouth of homeowner Arresting officer/Complainant/ Not to mention; indictment under Texas Penal Code 37.02 Mrs Roberson stated that she saw her Grand kid father show up [Check Reporter's Records vol 5 of 7 pg 47 line 1-3] later I will show you how she place that witness at 3 different location (her son-in-law) Another Alledge witness inside the car with Mrs. Roberson / There were also samples of Blood at the sence of crime [Check Exhibit No 10] Now to my understanding If me being the suspect Broken a window as point of entry fingerprinted If not whole habitation, under Brady v. Maryland, 373 U.S. 83 And MEANS-V. State, 429 S.W 2d 490 "A public prosecutor or other government lawyer in criminal litigation shall make timely disclosure to Counsel for the defendant or to the Defendant or to the defendant if he has no counsel of the Existence of evidence, know to the prosecutor or other government lawyer that tends to negate the guilt of the Accused, mitigate the degree of the offense, or Reduce the punishment" Supreme Court of Texas Rules Governing the State Bar of Texas Art. 10.09 (Code of Profe

ssional Responsibility) DR 7-103 (b) (1984) Also It is the Duty of the prosecutor to disclose Exculpatory evidence including information that would tend to impeach prosecutor witness Biglio v. United States, 405 U.S. 150, 154, 925. Ct 763, 766, 31 L.Ed. 2d Here's; Reporter's Record Vol 5. pg 51-59 questioning by (pro se) Wendlin W Alford pg 57 line 1-25 A (Mrs Roberson ee) A). Really? Q (Alford) Q 12:00pm A). A little — probably so. Probably so. You had to go to work, right? Q I had to go to work, yes. A). Right. Q About 12:00 pm? A. probably so. Q Okay I got — I got some where documentation saying About 11:00 — Mr Gilliam: Objection, Your Honor, hearsay. The Court: Sustained. Q (By Alford) It's on the police report. The officer that was called out, he stated that your — that he showed up At your dispatch first And he stated that he looked At the — Mr Gilliam: Objection, Your Honor, hearsay And Narrative. The Court: Sustained. Q (By Mr Alford) He looked At the window — well, the window was viewed And there e was a broken entry to the window — A) Uh huh. Q. — And I was supposed to have been the suspect who came into the house At the time. Okay. They found me up the street. Mr Gilliam: Objection, Your Honor, Narrative. The Court: Keep this in question And Answer form, Mr Alford, Please. Q (By Mr Alford) Where did you see me At when the officer showed up? A). Huh uh I seen you At my door first. Q When the officer showed up? A). When the officer showed up, where did I see you Q. Yes. A). Oh, you was running towards the Dollar General. Q I was running towards the Dollar General? A). Running, walking, whatever. Q So you were — you witnessed me running from your Apartment — from your Apartment or your establishment to the Dollar General? A). Uh-huh Q. Okay. A) That's where you was when he caught you. Q So you were in the car — A) Right Right. Q. — Riding Around? A) Right. Q Trailing me from your — A. Right Q — establishment to the Dollar General? A) Right. Q Who was with you? A). My neighbor. Q Neighbor who? A You don't Know her. Q Is she Hispanic, white, black? A). Hispanic, Right. Q Okay. Was there Anyone else with you? A). My — my husband — my daughter's husband. Q He's black? A. Uh-huh. Q So — A. You seen him. Q — once — once we got — well, I seen him. I can Acknowledge that I seen him At the Dollar General, of Course. A Uh-huh. Q That's why I'm iffy on the — Mr Gilliam: Objection, Your Honor, Narrative. The Court: Doer ruled. A) He Approached you About breaking into his house by the children Also. Q (By Alford) He Approached me About An incident

you occurred -- Q. Well, anyway -- The Court: Hold on. Both of you don't speak over each other please. One at a time. Q). (By Mr. Alford) You were with another young lady; am I correct? A). Talking about my daughter? Q. I don't know who she is to you. A) I don't know. I don't know. Q. Well, she's black & white? A) I don't know. I don't know what you talking about. Q. Your daughter. A. Okay. Say that. My daughter. Q. Well, I don't know who she is to you -- A) I just said my daughter. Q. No, I don't. I've only known you for how long? A) A couple of weeks. Q. A couple of weeks? A). Uh-huh. I think. Q. When did you started working at Walmart? A) You done started when I started, way in. I've been there before you -- Q. Do you know what day, ma'am? A) When I started? Q. Yes, ma'am. A) I started on February 28th -- February 26th. Q. Okay I started two weeks prior, I believe to you. A). Okay. Q. That means -- that means that in the time framing, it's probably about a nine-month ratio between that time that the incident occurred that we was working at that -- at that location together, right? A) Okay. Q. You do agree? A) Why don't you try to get to the point? Q. You do agree that -- A) No Q -- that's about a nine-month ratio from February to October? A. I don't know. Q. You don't? A) I don't recall. Q. Okay. Well, had there been any times where you had met Audra / Shannon at that location, me being working there? A) You mean Shay Q. Audra / Shannon. A) That's Shay? Q. The young lady you call Shay. A) Okay. I had met her a couple times at Walmart with you, yeah. Q. How long -- how long did you say you've been knowing her? A) I have no idea. Q. Okay. I thought you stated two weeks earlier. A) Not that long, though. Not that long. Q. I thought you stated two weeks earlier? A). That's not that long, right? Q. Okay. But you've been knowing me for nine months, though? A. Really? Q. Yes, ma'am. A. Oh, no. I don't think so. Huh-uh. Q. I started in February -- I started in February at Walmart as well. A). I ain't know you no nine months, baby. Trust me, no Q. Okay. Well, so we -- we pretty much around about your daughter, your daughter's husband and Dollar General when the officer showed up. Can you tell me what happened, from your point of view? A. I know the officer tell you to lay down, lay down, lay down on the ground and you started moving like you don't understand what he was saying. And we just started mumbling, boy, please don't shoot him, please don't shoot him. And he started to tell you to lay down. You like you didn't comprehend what that man was saying. Like, you just -- I don't know -- out of your mind or something. I don't know. Q. Is that your opinion

or you have facts to support that I was out of my mind -- A). I don't know. I'm stating, what is wrong with him? I've never seen you like that. I'm, like, what's wrong with you? What -- what happened? You just clicked. I don't know. Q There is nothing happened. That's -- that's just your opinion. A Okay. All right. Q Anyways, can you finish relaying what happened? A That's all I know. He just told you lay down and you wouldn't lay down. And then my son-in-law tried to come toward you and the police told him step back and he was talking about his kids and how his kids was afraid because you broke in our house. Q Okay. A). So that's why they was looking for you, asking why you broke in our house like that. Q So, to your understanding, was there some type of discrepancy going on before you showed up with me and your son-in-law or whoever he supposed to be? A. Not that I know. They were looking for you because you broke in our house -- Q). I'm asking you a question. How did it look in your opinion as far as the conversation that was going on between me and your son-in-law? A). You had no conversation with my son-in-law. You was lying on the ground. Weylin. Mr. Alford: No further questions. The Court: Thank you State. Mr. Gilliam: Nothing from the state, your ~~Honor~~. ~~NEXT WITNESS, PLEASE~~. The Court: All right, ma'am. You're excused. Thank you very much. The Witness: You're welcome.

Audrea L. Shannon

Much like: (Mr. Glen J Youngblood Anders Brief) Mrs. Shannon testified that she was known to Ms Roberson and alot of people as (Shay) and that we were in a dating relationship for any where between 6 to 9 month and known each other 5 or 6 years (I would assume) from [Check Reporter Record vol 5 of 7 pg 62 line 16-17] A type O on Court Report behalf she wrote "5, six minute at a time and to my understanding (I wonder) How many time could she have made that same mistake also, [pg 63 vol 5 line 16] As it was already stated that Ms Shannon never had any belonging at that Habitation by home owner Mrs Roberson and because of that she commit perjury under Texas Penal Code Section 3702 There was also a so call telephone call (before incident) that was recorded [pg 64 line 25 vol 5] to [pg 65 line 1-25 vol 5] then [pg 66 line 1-16 vol 5] which also under Brady v. Maryland/Means.State, The suppression by the prosecution of evidence favorable to an accused upon request violates Due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of prosecutor. (Then) There's; Texas Rules of Criminal Evidence Rule 403 part (B) Other crimes, wrongs or evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that acted in conformity there of It may; however be admissible for other purposes such as proof to motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident, provided, upon timely request by the accused, reasonable notice is given in advance of trial of intent to introduce in the state case such evidence other than that arising in the same transaction and (rule 402) All Relevant evidence is admissible, except as otherwise provied by constitution, by statue, by these Rules or other Rules prescribe pursuant to statutory Authority Evidence which is not Relevant is inadmissible Last, Ms Shannon was and is a Mental Health patient and before allow to get on the stand should have been Diagnosed to see If competted to with stand trial (as I was) check vol 6; Reporter's Record pg 80 line 7-12 (Then) Doctrine of Jeffery Henchment v Det. Mich. 3342 (bT) John Jackson vs Tex. 33223 E/John Penchment vs State of

Ohio 2633C File Play inside Courtroom Mr MHU patient [Check Statement of Fact from this Brief] Also [Reporter Record Vol 6 (Punishment Faze) pg 74,75, (then) 78,79] How Mr Shannon Committed Perjury on the Stand under Texas Penal Code Section 37.02

## Defense Witnesses

The Prose Appellant/me produce evident to a degree (because) upon questioning Perjury was committed which lead to the discovery of missing witness / Blood samples / police Report statement / Dispatch call / telphone call conversation Even lack of produce / prootocal inside of Courtroom setting. Which under the Doctrine of Brady V the State of Maryland (as well as) Mean VS to State / And Texas Rule of Criminal I / Appellant simply rested and closed (because) of all element fact of this case was not Disclosed.

## Summary

This Brief is prepared pretaining to the Requirements for the Brady Material (oppoisite to) Mr Glen J young Blood Brief Anders V California, (Not frivolous) other Doctrines like MEAN V State

Last, under Farretta V Cal Appellate Counsel / I Prose / Appellant sets forth three issuse dealing with the Court's revocation of the Appellant's right to self representation under Federal and State law; Ordering the Appellant shackled during the punishment phase of the trial.

## ISSUES PRESENTED

### ISSUE NUMBER 1

Appellant was Deprieved of his Constitutional Right to Represent Himself During The punishment Phase of The Trial in violation of The U.S. Const. Amend. 6th And 14th

### Argument and Authority

"The Sixth and Fourteenth Amendments of our Constitution guarantee that a person brought to trial in any state or federal court must be Afforded the right to the assistance of counsel before he can be validly convicted and punished by imprisonment. This clear constitutional rule has emerged from a series of cases decided here over the last 50 years. The question before us now is whether a defendant in a state criminal trial has a constitutional right to proceed without counsel when he voluntarily and intelligently elects to do so. Stated another way, the question is whether a State may constitutionally hale a person into its criminal courts and there force a lawyer upon him, even when he insists that he wants to conduct his own defense. It is not an easy question, but we have concluded that a State may not constitutionally do so. "Faretta v. California, 422 U.S. 806 (1976) "Although the right to self-representation is Absolute, a waiver of the right to counsel will not be lightly inferred, and the courts will indulge every reasonable presumption against the validity of such a waiver." Manley v. State, 23 S.W. 3d 172, 173 (Tex. App.--Waco 2000, pet. ref'd) (internal quotations omitted); see Johnson v. Zerbst, 304 U.S 458, 464, 58 S.Ct. 1019 1023, 82 L.Ed. 1461 (1938), and Jordan v. State, 571 S.W. 2d 883, 884 (Tex. Crim. App. 1978). "The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction. It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage. And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of that respect for the individual which is the life-blood of the law. "Illinois v. Allen, 397 U.S. 337, 350-351 (Brennan, J., Concurring)", Faretta v. California 422 U.S. 806 If the record indicates a clear expression

of the defendant's desire to proceed pro se, accompanied by careful and thorough admonishments from the trial court, the reviewing court should conclude that sufficient evidence exists to support allowing for waiver of counsel. See Barras v. State, 902 S.W. 2d 178, 180-81 (Tex. App.--El Paso 1995, pet. ref'd); Ford v. State, 870 S.W. 2d 155, 158 (Tex. App.--San Antonio 1993, pet. ref'd); Hobbs v. State, 778 S.W. 2d 185, 186-87 (Tex App.--Beaumont 1985, no pet.); Logan v. State, 690 S.W. 2d 311, 313-14 (Tex. App.--Dallas 1985, pet. ref'd). Although there has been no exact line of questioning set out to establish a knowing and intelligent waiver of the right to counsel, the trial court should at least inquire into the accused's age, background, education and experiences, in addition to making the accused aware of the advantages and disadvantages of self representation. Calcarone v. State, 675 S.W. 2d 785, 786 (Tex. App.--Houston [14th Dist.] 1984, no pet.) Moreover, the court should make the accused aware of the general nature of the offense charged, aware that the accused must comply with the rules of evidence and criminal procedure, and aware that the accused will receive no special consideration by the court. Id. All of these admonishments should be sufficiently reflected within the record to enable the appellate court to make an accurate assessment of the decision of the accused. Johnson v. State, 760 S.W. 2d 277, 279 (Tex. Crim. App. 1988). See Also Faretta v. California, 422 U.S 806 (1976). The trial court conducted a Faretta hearing and complied with all of the above making the record in this case indicate a clear expression of the Appellant's desire to proceed pro se. Accordingly, the trial court granted Appellant his right to proceed pro se. [Reporter's Record, Vol. 3 pg 4-54; Clerk's Record p114] While jury was deliberating [Check pg 170 Harris County Criminal District Docket Sheet] October 2, 2014 at 855 am 70:53 I) Appellant never made it to the Courtroom until after Almost 10am morning of October 2, 2014; but was sitting in an Holding cell Downstair trying to Explain to Deputy Moreono (on camera) from 730am - 9 something am. I was in trial. Once up stair an incident was created outside the Courtroom Another holding cell (Alledgition) The Shank; by a Deputy Ojeda case was later Dismiss February 27th 2015 Along with all other case Alledgation; No Real True bill; Also Check part 9 of

Brady Material; | Farrett v. Cal (Check list Items) in this Brief is Referance to Mr Glen Jyoung blood Ander's Brief **Not Frivolous**; That because of his Obstruction of Governmental Operation. (Texas Penal Codes Title(8) offenses Against Public Administration) I/Appellant right to self Represation should not have been taken not to mention a court Appoint Attorney forced upon me; Violation of my 6th and 14th Amendment United State Constitution Farret v. California 422 U.S. 806 (1975) The Court: Have a seat, Mr. Alford. All right. Mr Alford, it's my understanding that when you were brought up this morning Deputy Ojeda, who is one of my regular court bailiffs, found on you what appears to be some pills, a piece of wire, about a, I would say, 5 to 6 inch homemade ~~jai~~ jail shank, in addition to some other torn clothing that was used to secure it to your leg and other things like that. In addition, speaking with Deputy Ojeda, he told me (**Alledgation**) that your statement to him was that "you've had it on you All of your Court settings, which was" — **I don't know if** that's true because I know, **According to Deputy Ojeda,** he personally searches you when he -- when you've been on our docket, but you also stated that you had it on you yesterday. **Based on that Alledgation** (he said; ~~STATEMENT ON RECORD~~), sir you have now terminated your right to represent yourself. You are now in the courtroom as a regular defendant. You now have your leg shackles on you. Mr. Alford, I'll get to you in a moment You now have leg shackles on you. The leg shackles, you need to be careful that the jury does not hear them while you move around; but Mr. Aguirre is now your attorney If you would like to take this issue up on appeal, you're welcome to do so. But at this time you are considered a very high risk and a very high threat to the safety of the people in this courtroom. I am not going to tolerate any outbursts from you. Any movements that's are not necessary or anything else. Do I make myself explicitly clear. Mr Alford **The Defendant:** Yes sir (**Me/Appellant**) The Court: In addition, the Ert Deputies will be in here. Whatever they feel is appropriate for the level of security now that they feel is necessary to protect everyone in this courtroom, including Mr Aguirre, who was sitting next to you yesterday. So have a seat, sir. We have some read back. Mr Aguirre has gone over that with you. **The Defendant:** May I -- (**I/Appellant try to speak on my behalf but wasn't Allowed; Self Representation**)

The Court: No, you MAY NOT. You ARE NOW REPRESENTED by Mr Aguirre (NO STATE MAY not Constitutionally force a lawyer upon him/her. Also, Faretta V. California, 422 U.S 806 (1975) if you have any questions you may address them through him. HAVE A SEAT. Let's being in the jury, please. [Reporter's Record, Vol 6, pg 6-8]. Also, ~~his Court~~ SUBSEQUENTLY, a portion to the testimony of Ms Roberson was read to the jury in response to their question. [Check this brief part Brady Material | Farret V Cal. (checklist items) In Respones to Reference Brief Mr Glen J Youngblood Ander 's Briefs [my opinion) Not Frivolous Sec #5 Jury selection; Then | Sec. #6 Jury instruction] Then the Jury retired and returned with a verdict of guilty. The trial Continued to the punish ment phase. I/Appellant try to talk to Force Upon Me Court Appoint and as I also stated in Motion to Dissmiss Court Appionted Number II / SEC B [Check pg 114 Clerk Records] He woul dnot listen. Not to Mention inorder not to obstructed courtroom proceeding as the law state's I MADE NO FALSE MOVEMENT but Did try to Exercies my Right's [Reporter Records Vol.6 pg 7 lines 23-25 (then) pg 8 line 1-4] The Court: So have a seat, sir. We have some readback. Mr Aguirre has gone over that with you. (which; was'nt Done Also/ Never went over anything) The y "Crt Deputies" wouldn't Allow ME (No Nothing) with their wespon at hand. The Defendant: MAY I-- The Court: No you MAY NOT; Although Courts had been told that many criminal defendants representing themselves MAY use the courtroom for deliberate disruption of their trials But the right of self-representation has been Recognized from our beginnings by fed eral law and by most of the States, including The State of Texas, and no such result has there by occurred. Moreover, the trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct. See Illinois v.Allen, 397 U.S.337 Faretta v. California 422 U.S. 806 (1975) None Never happen and Right was tooken Due to Allegeition; Much like what Mr Glen J Youngblood Stated (in Ander's Brief) The State may even over objection by the accused-Appoint a "Standby Counsel" to aid the accused if and when the Accused Request the P, (Also Never Done) And to be available to Represent the Accused in the event that termination of the defendant's self-representation is necessary. See Faretta California 422 U.S. 806 (1975). In United States v. long, 597 F.3d 720 (5th Cir, 2010 No negative treatment in subsequent cases) in discussing the waiver of the right of

self representation said, "[A] defendant can waive his Faretta rights, either by expressly requesting standby counsel's participation on a matter or by acquiescing in certain types of participation by counsel (also ~~none~~ Never Done) even if the defendants insists that he is not waiving his Faretta rights.... [O]nce a prose defendants invites or agrees to any substantial participation by counsel, subsequent appearances by counsel must be presumed to be with the defendants (I/Appellant ~~tryed~~) Acquiescence, at least until the defendant expressly and unambiguously renews his request that standby counsel be silenced.... (Meaning; If I never ask for help I shouldn't have to Renew Right.) Standby counsel's participation [must] be 'over the defendant's objection (which was by Trial Court; even Thou never ask for help) in order to erode the defendant's Faretta Rights." In the case at bar the court terminated I/Appellant's right of self Representation based on allegation of a discovery ("The Shank") not to mention upon Deputy Ojeda statement (Perjury 37.02 Texas Penal Code) He stated I told him I had shank all time upon courtroom setting (If so; Why Discovery made at Harris County Sheriff's Officer holdover cell (much like; Mr Glen Youngblood stated in his Anders Brief pg 29 of 36 (2011 ~~∞~~) and not in the courtroom. The weapon was said to be taken off Me/Appellant and represented no threat to anyone in the courtroom. (Right should not been tooken) During the entire trial proceedings Appellant was respectful to the Court and his conduct was normal, reserved and appropriate to the circumstances in the courtroom My conduct was not obstructionist in any manner. My conduct in the courtroom did not rise to the level of deliberatly engaging in serious and obstructionst misconduct Authorizing termination of Appellant's Constitutional right to self representation under the U.S Const. Amend. 6th and 14th, and Tex. Const. Art. 1 § 10.

### Issue Number 2

Appellant was deprieved of His Constitutional Right To Represent himself During The Punishment Phase of The Trial In Violation of The Tex. Const Art. 1 § 10.

### Argument and Authority

The foregoing argument and authority presented above in the Argument and Authority for Issue Number 1 is incorporated here in with particular attention to the Texas case law cited.

### Issue Number 3

Appellant's Constitutional Rights under The U.S. Const. Amend. 5th and 14th were violated when the Trial Court Ordered him/me to be Shackled in Front of The Jury During The Punishment Phase.

### Argument And Authority

The United States Supreme Court has held that the appearance of a defendant in shackles before a jury during a trial can violate the defendant's fifth and Fourteenth Amendment rights to due process. Deck v. Missouri, 544 U.S 622 629-34 (2005). The Court reasoned that "visible shacking undermines the presumption of innocence and related fairness of the factfinding process [I tryed].... can interfere with the accused's ability to communicate with his lawyer" and "participate in his own defense, "and affronts the dignity and decorum of judicial proceedings that the judge is seeking to uphold." Id. At 630-31. [A]ll efforts should be maintained to prevent the jury from seeing the defendant in shackles, except. where there has been a showing of exceptional circumstances or a mainfest need for such Restraint. Long v. State, 823 S.W. 2d 259, 282 (Tex. Crim. App. 1991). It is within the discretion Id. (Noting that "the record must clearly and affirmatively reflect the trial judge's reasons therefor") "Nowhere in The Record it reflect Trial Court Reasonin

Courts have recognized a narrow exception to this rule if a trial court determines that there is a particular need for shackling the defendant, such as a demonstrated propensity to attempt escape or assault others in the courtroom. Id. (citing Deck, 544 U.S 622, 627, 632 (2005), Long v State, 823 S.W.2d 259, 282, The trial Court's determination is reviewed under an abuse of discretion standard. Long, 823 S.W. 2d At 282 A trial Judge confronted by a defendant's (None) disruptive conduct can exercise discretion to meet the circumstances of

CASE, AND though NO single formula is best for ALL situation, there ARE AT least three Constitutionally permissible APProaches for the court's handling ofAN obstreperous defendant: (1) bind And gag him AS A lAST resort, thereby keeping him present; (2) cite him for criminal or civil Contempt; or (3) remove him from the courtroom, while the trial CONTINUES, until he promises to conduct himself properly. Illinois v. Allen, 397 U.S. 337 (1970). (which Also none happen)

The fifth And fourteenth Amendments of the United States Constitution prohibit the use of physical restraints visible to the jury unless the trial court in its discretion finds that they ARE justified by AN ESSENTIAL State's interest such As physical security, ESCAPE prevention, or court room decorum. Deck v. Missouri, 544 U.S. 622, 628, 125 S.Ct. 2007, 161 L.Ed. 2d 953 (2005) Courts have held that some circumstances justify the use of restraints during trial, including situations where AN ACCUSEd expressed his intention to ESCAPE, made threats of physical violence, resisted being brought to court, repeatedly interrupted the court proceedings, Attempted to leave the courtroom, or engaged in other egregious conduct. Cedillos v. State, 250 S.W. 3d 145 (Tex. App. – Eastland 2008.) NONE happen

When AN Appellant complains of the use of shackles, it is first determined if the trial court Abused it's discretion by Allowing Appellant to be shackled. ("Did do or vioce opinion BECAUSE of) "Sudden movement too ERt security At the hands of their weapons", So If it must then be determine whether Appellant suffered harm As a result. Long v. State, 823 S.W 2d 259, 282 (Tex. Crim. App. 1991).

In the CASE At bar, Court choose to Employ the first of the Illinois v. Allen opinion; to bind And gag him As a last resort, thereby keeping him present in the court room. The court choose not gag Appellant. The Court Also utilized the services of the ERt deputies AS A security precaution [Reporter's Record, vol 6, pg 68] I choose to go with NO Sudden move's.

The chief feature that distinguishes

the use of identifiable security officers from courtroom practices that might be found inherently prejudical is the wider range of inferences that a juror might reasonably draw from the officer's presence. While shackling and prison clothes are unmistakable indications of the need to separate a defendant from the community at large, the presence of guards at a defendant's trial need not be interpreted as a sign that he is particularly dangerous or culpable. Jurors may just as easily believe that the officers are there to guard against disruptions emanating from outside the courtroom, or to ensure that tense courtroom exchanges do not erupt into violence. (which) [I felt unsafe myself] Indeed, it is entirely possible that jurors will not infer anything at all from the presence of the guards. If they are placed at some distance from the accused, security officers may well be perceived more as elements of an impressive drama than as reminders of the defendant's special status. Our society has become inured to the presence of armed guards in most public places; they are doubtless taken for granted so long as their numbers or weaponry do not suggest particular offical concern or alarm. See Hardee v. Kuhlman, 581 F.2d 330, 332 ((A2 1978). U.S v. Burch, 48 F.3d 1233 (10th Cir. 1995 no negative treatment in subsequent cases). See also Holbrook v. Flynn., 475 U.S. 560, 106 (1986), Deck v Missouri, 544 U.S. 622, 658-659.

was deliberating [check pg 170 Harris County Criminal District Docket sheet] While jury October 2, 2014 at 855AM -1053 I /Appellant never made it to the court until almost 10 AM but was sitting in an Hold cell Downstair trying to explain to Deputy Mondrans (on camerea) from 730 AM-9 something AM (that) I was in trial. Once up stair an incident was created outside the courtroom Another Holding cell Allegation The Shank by a Deputy Djeda CASE was later Dismiss 02/27/2015 (check part 9 of Brady Material) Farret V Cal. (check list Items) in this Brief in Reference to Mr Glen J Youngblood Anders Brief (my opinion) Not Frivolous

# ConClusion

That BECAUSE his Obstruction of Governmental Operation. (Texas Penal Code Title 8 Offenses Against Public Administration) I/Appellant right to self Representation Should not have been taken not to mention A Court Appoint Attorney forced upon me violation of my 6th 14th Amendment US Constitution Farretta v. CAL. (Doctrine) and missing Evident/ Witness Et coo could not Be admissible favorable on Defendant/Appellant Behalf Under Doctrine of Brady v. Maryland / Mean v. State Last,

Based on my Ability As A undersigned Attorney REVIEW of the Record in this CASE, including the many motions filed by me/Appellant, legal research As Prose/Appellant/Defendant Argument presented herein above, The Appeal filed in this CASE : Opposite to Referrance Brief filed on my behalf By Mr Glen J YoungBlood is **Not Frivolous** And ;

Should be Either Dismiss or Remanded for A New Trial

Michael Zamora #1711784
899 FM 632 (Connelly Unit)
Kennedy, TX 78119

Court of Appeal, First District
301 Fannin Street
Houston, Texas 77002-2066

RECEIVED
FIRST COURT OF APPEALS
HOUSTON, TEXAS
JUN - 3 2015
CHRISTOPHER A. PRINE
CLERK

FOREVER USA

5
105